IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

RECEIVED
USDC, CLERK, CHARLESTON, SC

2014 FEB 10  P 1:19

| | |
|---|---|
| Jeffrey R. Ward, | ) |
| Plaintiff, | ) |
| vs. | ) Civil Action No. 2:12-3654-RMG |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | ) ORDER |
| Defendant. | ) |

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). In accord with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation ("R & R") on January 24, 2014, recommending that the decision of the Commissioner be reversed and remanded. (Dkt. No. 19). The Commissioner filed objections to the R & R. (Dkt. No. 20). As more fully set forth below, the Court reverses the decision of the Commissioner and remands for further action consistent with this order.

**Legal Standard**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is

made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

The Commissioner, in passing upon an application for disability benefits, is required to undertake a five-step sequential process. At Step One, the Commissioner must determine whether the applicant is engaged in substantial gainful work. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful employment, the Commissioner proceeds to Step Two, which involves a determination whether the claimant has any "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). If the claimant has one or more severe impairments, the Commissioner proceeds to Step Three, which involves a

determination whether any impairment of the claimant satisfies any one of a designated list of impairments that would automatically render the claimant disabled. *Id.* § 404.1520(a)(4)(iii). Where the claimant has multiple impairments but none satisfy independently the criteria for a listed impairment, the Commissioner is obligated to consider the combined effect of the various impairments and determine whether they are the medical equivalent of the criteria of a listed impairment. 42 U.S.C. § 423(d)(2)(B); *Walker v. Bowen*, 889 F.2d 47, 49-50 (1989); 20 C.F.R. § 416.926.

If the claimant does not have a listed impairment or the medical equivalent of a listed impairment, the Commissioner must proceed to Step Four, which involves an assessment of the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(iv). This requires assessment of the claimant's ability "to meet the physical, mental, sensory, and other requirements of work." *Id.* § 404.1545(a)(4). In determining the claimant's RFC, the Commissioner "must first identify the individual's functional limitations or restrictions" and provide a narrative "describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8P, 61 Fed. Reg. 34474, 34475, 34478 (July 2, 1996).

Once the claimant's RFC is determined, the Commissioner must assess whether the claimant can do his past relevant work. 20 C.F.R. §§ 404.1520(4)(iv), 1545(a)(5)(i). If the claimant, notwithstanding the RFC determination, can still perform his past relevant work, he is deemed not to be disabled. If the claimant cannot perform his past relevant work, the Commissioner then proceeds to Step Five to determine if there is other available "work which exists in significant numbers either in the region where [the claimant] lives or in several regions

of the country" he can perform in light of the RFC determination. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(a)(4)(v). At Step Five, the burden shifts to the Commissioner to "show that the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy." *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. 20 C.F.R. § 404.1545. The regulation, known as the "Treating Physician Rule," imposes a duty on the Commissioner to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). The Commissioner "[g]enerally . . . give[s] more weight to opinions from . . . treating sources" based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2). Further, the Commissioner "[g]enerally . . . give[s] more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." *Id.* § 404.1527(c)(1).

Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of specifically identified factors, including the examining relationship, the nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician is a specialist. *Id.* §§ 404.1527(c)(1)-(5). The

Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 61 Fed. Reg. 34490, 34492 (July 2, 1996). Under the Treating Physician Rule, preference is generally given to the opinions of treating physicians over the opinions of non-examining chart reviewers or one time examiners. 20 C.F.R. § 404.1527(c)(1),(2).

## Discussion

### A. The Administrative Law Judge's Failure to Address and Weigh the South Carolina Retirement System's Decision of September 8, 2005, Approving Plaintiff's Application for State Disability Retirement

The Magistrate Judge ably set forth the legal and factual issues presented by the failure of the Administrative Law Judge ("ALJ") to specifically address and weigh the prior decision of the South Carolina Retirement System of September 8, 2005, granting the claimant state disability benefits. (Dkt. No. 19 at 5-8). The Commissioner has filed objections to the R & R, acknowledging that the ALJ "did not expressly mention the state determination" but the ALJ's decision was "materially consistent" with the state disability determination. (Dkt. No. 20 at 1). While there is obviously some overlap between the findings of the ALJ and the South Carolina Retirement System determination, the state disability determination contains various findings that suggest a far more serious psychiatric condition of the claimant than found by the ALJ. These findings include the following: (1) the claimant's functioning suggested "a borderline personality disorder"; (2) Plaintiff "appears to be a paranoid person that has a phenomena of feeling he is being watched"; and (3) Plaintiff is "markedly impaired by depression, anxiety, explosiveness, and suspiciousness." Tr. 316, 318.

The Court finds that the Magistrate Judge appropriately analyzed the issues regarding the

ALJ's failure to consider the state disability determination and correctly concluded that reversal of the Commissioner's decision with remand was the appropriate action. The Court hereby adopts Section I of the Magistrate Judge's R & R regarding the state disability decision (Dkt. No. 19 at 5-8) as the order of the Court regarding this issue.

### B. The Administrative Law Judge's Failure to Consider and Explain the Combined Effects of Plaintiff's Severe Psychiatric Disorders and Non-Severe Vision Disorder

The Magistrate Judge correctly noted the obligation of the ALJ to consider and address the combined effects of Plaintiff's various severe and non-severe disorders under the authority of *Walker v. Bowen*, 872 F2d 47, 50 (4th Cir. 1989). The Commissioner disputes the Magistrate Judge's analysis and conclusion and argues alternatively harmless error. (Dkt. No. 20 at 2-3). The Court finds that the Magistrate Judge correctly analyzed the factual and legal issues and concluded that reversal and remand are necessary. The Court, therefore, adopts Section II of the R & R regarding Plaintiff's vision disorder (Dkt. No. 19 at 8-10) as the order of the Court regarding this issue.

### C. The Administrative Law Judge's Failure to Evaluate the Opinions of Plaintiff's Treating Specialist Physicians Regarding the Diagnosis of Asperger's Syndrome under the Treating Physician Rule

The ALJ at Step Two found that Plaintiff's diagnosis of Asperger's Syndrome[1] was not severe. Tr. 15. The ALJ reached this conclusion because the diagnosis had been made

---

[1] Asperger's Disorder (also known as Asperger's Syndrome or simply "Asperger's") has as its "essential features . . . severe and sustained impairment in social interaction . . . and the development of restricted, repetitive patterns of behavior, interests, and activities . . . . The disturbance must cause clinically significant impairment of social, occupational, or other important areas of functioning . . . ." Diagnositic and Statistical Manual of Mental Disorders, 75 (4th ed. 1994) (hereinafter DSM-IV)

"following an initial psychiatric examination in October 2010" and that Plaintiff had not undergone "any comprehensive examination to validate this diagnosis, as required." *Id.* A review of the record indicates that Plaintiff was seen at the Institute of Psychiatry at the Medical University of South Carolina ("MUSC") on October 18, 2010. Plaintiff's diagnosis included "r[ule] o[ut] P[ervasive] D[evelopmental] D[isorder] . . . versus Aspergers." Tr. 430-34. Dr. McLeod Gwynette, a board-certified psychiatrist, signed this diagnosis.[2] Plaintiff was again seen in MUSC's Institute of Psychiatry on November 15, 2010, and the differential diagnosis that included Asperger's was then changed to a definitive diagnosis of Asperger's. Tr. 435-37. Dr. Gwynette signed the November 15, 2010 office note. Plaintiff returned to MUSC on December 15, 2010, and the diagnosis of Asperger's continued. Tr. 438-40. Dr. Gwynette also signed that note. On subsequent visits in 2011, Plaintiff's office notes at MUSC's Institute of Psychiatry, also containing the diagnosis of Asperger's, were signed by two other board-certified psychiatrists, Dr. Alvaro Giraldo[3] and Dr. Kelly Holes-Lewis.[4] Tr. 438-43, 450-52.

The ALJ's analysis of the opinions of the three treating specialist physicians was flawed on many counts. First, the statement that the Asperger's diagnosis was made "following an initial psychiatric examination" is not supported by substantial evidence. The Asperger's diagnosis was only part of an initial differential diagnosis following Plaintiff's first examination

---

[2] www.llr.state.sc.us (follow "Licensee Lookup" hyperlink; then select "Medical Board" from drop-down menu; then enter name "Gwynette")

[3] www.llr.state.sc.us (follow "Licensee Lookup" hyperlink; then select "Medical Board" from drop-down menu; then enter name "Giraldo")

[4] www.llr.state.sc.us (follow "Licensee Lookup" hyperlink; then select "Medical Board" from drop-down menu; then enter name "Holes-Lewis")

at MUSC and the diagnosis of Asperger's was made after the second examination and reaffirmed in three subsequent examinations. Tr. 430-43, 450-52. Second, the ALJ indicates that the diagnosis of Asperger's by the MUSC physicians was deficient because Plaintiff did not undergo "any comprehensive examination . . . as required." Tr. 15. The record documents a number of extensive office visits with Plaintiff that address the Asperger's diagnosis, and the administrative record before the Court lacks any support that there was some additional required evaluation not performed by Plaintiff's specialist physicians before a diagnosis of Asperger's could be made. The Court finds that the ALJ's statement that Plaintiff's diagnosis of Asperger's was deficient because of a failure of his treating physicians to perform some required additional examination is not supported by substantial evidence. Third, the ALJ's rejection of the opinions of Plaintiff's treating specialist physicians that he has Asperger's Syndrome was not addressed pursuant to the standards of the Treating Physician Rule. 20 C.F.R. § 404.1527(c). Indeed, the Court cannot discern any standard the ALJ utilized other than his conclusion that some unstated additional examination that was required had not been conducted. On remand, the opinions of Plaintiff's treating physicians should be evaluated pursuant to the standards of the Treating Physician Rule, including consideration of the physicians' treatment and examination history with Plaintiff, the supportability of their diagnosis of Asperger's based on their documented examinations, the consistency of their opinions, and the physicians' status as board certified specialists. Utilizing these proper legal standards for evaluating the opinions of treating physicians, the ALJ should then reevaluate Plaintiff's Asperger's diagnosis at Step Two and, as appropriate, every step

thereafter.[5]

## Conclusion

Based on the foregoing, the Court hereby reverses the decision of the Commissioner, pursuant to 42 U.S.C. § 405(g), and remands for further action consistent with this order.

AND IT IS SO ORDERED.

_____
Richard Mark Gergel
United States District Judge

February 10, 2014
Charleston, South Carolina

---

[5] None of the non-examining, non-treating consulting physicians who provided written reports in this administrative record appear to have had access to Plaintiff's records from MUSC's Institute of Psychiatry in which the Asperger's diagnosis was made. The only chart review that was conducted after Plaintiff initiated treatment at the Institute of Psychiatry on October 18, 2010, was conducted by Dr. Judith Von, Ph.D, on January 6, 2011. Dr. Von indicated that she was aware of Plaintiff's visits to the Institute of Psychiatry in October and November of 2010 from references in records of the MUSC Storm Eye Institute and had requested the records but they were not received. Tr. 369, 383. Thus, the only expert opinions in this record regarding the Asperger's diagnosis are the three treating specialist physicians of Plaintiff from the Institute of Psychiatry.